ROBERT E. BLAIR, Appellee, *vs.* THE ILLINOIS CENTRAL
RAILROAD COMPANY, Appellant.

*Opinion filed December 22, 1909—Rehearing denied Feb. 3, 1910.*

1. BRIEFS—*argument on the facts in a personal injury case is
improper in Supreme Court.* Argument upon the question of the
weight or preponderance of the evidence as to controverted ques-
tions of fact in a suit at law is proper in the Appellate Court but
not in the Supreme Court.

2. NEGLIGENCE—*what tends to show that brake-shoe was de-
fective.* The facts that the engineer in charge of a switch engine
had twice requested that a new brake-shoe be put on a certain
drive wheel, that the brake-shoe complained of was broken at the
time the engine was derailed and that when picked up it was shown
to be much worn, tend to show that such brake-shoe was defective.

3. SAME—*what is sufficient notice of defective condition of a
brake-shoe.* Entries made by the engineer of a switch engine, in
a book kept at the round-house for the purpose of having needed
repairs on such engine suggested, asking to have a new brake-
shoe put on a certain driving wheel of the engine, are sufficient
notice to the company of the defective condition of the brake-shoe.

4. SAME—*what tends to show that derailment was caused by a
broken brake-shoe.* Proof that the pieces of a broken brake-shoe
picked up after the derailment of a switch engine might have
caused the derailment if they had fallen on the rail in front of the
drive wheel tends to show that such was the cause of the derail-
ment where no other reasonable explanation is shown, and where
the brake-shoe was much worn before the derailment occurred and
had been complained of by the engineer.

5. TRIAL—*when instruction to find for defendant should not be
given.* A peremptory instruction to find for the defendant in a
personal injury case cannot be given if the evidence, together with
the reasonable inferences to be drawn therefrom, tends to support
the cause of action set up in the declaration.

6. INSTRUCTIONS—*substantial duplicate of a given instruction
may be refused.* It is not error to refuse an instruction where the
court gives, at the same party's request, an instruction embodying
substantially same propositions as are contained in the one refused.

APPEAL from the Appellate Court for the Second Dis-
trict;—heard in that court on appeal from the Circuit Court
of Kankakee county; the Hon. FRANK L. HOOPER, Judge,
presiding.

W. R. HUNTER, (JOHN G. DRENNAN, of counsel,) for appellant.

PEASE, SMIETANKA & POLKEY, (WARREN PEASE, and CHARLES P. MOLTHROP, of counsel,) for appellee.

Mr. JUSTICE VICKERS delivered the opinion of the court:

This is an action on the case brought in the circuit court of Kankakee county by Robert E. Blair against the Illinois Central Railroad Company to recover damages for a personal injury received on October 7, 1906, while engaged in the line of his duty as a switchman in the railroad yards of defendant located in the city of Kankakee. A judgment for $5000 has been affirmed by the Appellate Court for the Second District, and the railroad company has prosecuted a further appeal to this court.

The declaration consists of three original and one additional count. The first count was dismissed on the appellee's motion, and the case was submitted to the jury on the second and third original and first additional counts. The second count alleged that while appellee was employed by appellant as a switchman, appellant negligently supplied an engine upon which the brake-shoes had become so worn and thin that they were liable to break when in use, of which appellant had notice, and that while appellee was standing on the foot-board of said engine, in the exercise of due care for his own safety, one of the brake-shoes broke and fell on the track, thereby causing a derailment of the engine, causing appellee to fall from the foot-board, whereby his foot was crushed and mangled so that amputation became necessary. The third count alleged that the switch engine was so worn out, broken and defective that certain parts thereof were liable to break, become loose and derail the engine, and that a certain portion of said engine did so become loose and fall while the engine was in motion, thereby derailing it and injuring appellee while in the

243—15

exercise of due care for his own safety. The first additional count alleged that the rails of the track over which appellee was obliged to travel upon the engine in the performance of his duty were so improperly placed and so insecurely fastened that they spread apart, causing the derailment of the engine and the consequent injury of appellee.

The case has been tried twice. At the first trial appellee obtained a verdict for $5000, which was set aside by the trial court and a new trial awarded. Upon a second trial another verdict for $5000 was rendered in favor of the appellee. A motion for a new trial was overruled and judgment entered on the verdict. There are only two reasons urged in this court for a reversal: First, appellant contends that the court erred in not directing a verdict, on its motion, at the close of all of the evidence; and second, that the court erred in refusing to give an instruction requested by appellant.

The evidence tends to establish the following facts: Appellee, a young man about twenty-three years of age, had been employed by appellant prior to the accident as a freight brakeman. About one week before his injury he was transferred from the road to the yards at Kankakee to do switching. On the 7th day of October, 1906, appellee was riding on the foot-board of switch engine No. 109, which was at that time headed north and pushing a freight car ahead of it, and that appellee's purpose in being on the foot-board of the engine was to uncouple the freight car when it became necessary. The engine was moving at the rate of about six miles per hour. While the engine was thus proceeding northward on track No. 2, pushing the freight car ahead of it, the front and middle drive wheels of the engine left the track and ran about twenty-five to thirty feet on the ties before it was stopped. Appellee was thrown from the foot-board and one of his feet caught between the foot-board and the rail and so injured as to necessitate amputation.

Engine No. 109 had three drive wheels on each side, about the center of its body. A brake-shoe hung in front of each of these drive wheels. After the accident an examination of the engine disclosed the fact that on the right side of the engine the brake-shoe of the front drive wheel was broken off and the lower portion of the brake-shoe on the right center or main driving wheel was also missing. The center drive wheel on each side was called the main driver, and they were designated as right main driver and left main driver. Neither of these main drivers had flanges. The brake-shoe from the right front driver was found under the engine after the accident. The lower end of the brake-shoe from the right main driver was picked up between the engine and the tender. The main drive wheel on either side of the engine was supplied with springs, which would allow some rise of the wheels without derailing the engine. The examination after the derailment failed to show that the derailment was caused by the spreading of the rails, as alleged in the additional count of the declaration. It was shown that the pieces of brake-shoes that were picked up after the accident would have caused a derailment if they had fallen on the rail in front of the drive wheel. No other explanation of the derailment is furnished by the evidence.

The evidence shows that the appellant kept a book in its round-house near these yards in which engineers would make an entry suggesting any needed repairs on their engines when they would come into the round-house; that on September 23 VanHorn, who was in charge of engine No. 109, made the following entry on the want-book at the round-house: "Put on a new R. M. brake-shoe." The engineer testified that he ordered the brake-shoe because in his opinion one was needed. He continued to run the engine from the 23d to the 29th of September, and no new brake-shoe having been put on he made the following entry in the book referred to: "9/29.—Put on R. M. brake-

shoe." He continued to run the engine from the 29th of September to the 5th of October, when he was succeeded by Oliver A. Johnson as engineer on engine No. 109. There is no evidence that this right main brake-shoe had been replaced. The accident happened two days later, on October 7, and the examination made at that time clearly indicates that the brake-shoe had not been replaced with a new one, in accordance with the engineer's requests.

Appellant's argument that the court erred in refusing to direct a verdict in its favor is based on the contention that the evidence does not establish the negligence charged in either count of the declaration. The question thus raised by the appellant involves the following points of inquiry: (1) Was the brake-shoe defective? (2) If so, did appellant have notice in time to have repaired it before the accident? (3) If both these questions are answered in the affirmative, then the further inquiry arises, did such defective brake-shoe cause the accident? These questions all involve matters of fact, and if there is any evidence fairly tending to establish them the court did not err in submitting them to the jury.

Appellant's brief is largely devoted to an argument as to the weight or preponderance of the evidence upon these several questions. This is not the proper method of treating a question of fact in this court. In the trial and Appellate Courts the question of the preponderance of the evidence was open for consideration but is not open here. The fact that counsel for appellant found it necessary to argue the question as to the preponderance of the evidence amounts to a confession that there is sufficient evidence tending to support appellee's declaration to require the submission of the case to the jury. The fact that the engineer had on two occasions within a short time before the accident requested that a new brake-shoe be put on the right main driver, together with the fact that the brake-shoe on that wheel was broken at the time of the accident and

when picked up was shown to be much worn, is evidence tending to prove that the brake-shoe was defective. The entry in the book kept for that purpose at the round-house was sufficient to notify appellant of the defective condition of the brake-shoe. If the machinist in charge of the repair of engines at the round-house did not examine the book during the two weeks that the entry remained there prior to the accident, the jury might well find that appellant was guilty of negligence in not discovering that the brake-shoe was out of repair. The third and last element that enters into this question (that is, whether the defective brake-shoe was the proximate cause of the derailment of the engine,) is proven by the absence of any other reasonable explanation. The evidence shows that one of the rails near the point of derailment was loose from the ties, so that it would spring slightly when subjected to the strain of an engine passing over it, but this was shown to be so slight as not to account for the derailment. The only reasonable explanation of the accident is that the defective iron brake-shoe broke and fell on the rail in front of the wheel and that the wheel running onto the brake-shoe was thrown from the rail. We think that the evidence strongly tends to show that the brake-shoe was defective, that appellant had notice thereof or in the exercise of reasonable diligence would have had notice, and that this defect was the proximate cause of the accident. The court therefore did not err in refusing to take the case from the jury. A peremptory instruction should not be given where the evidence introduced, together with all reasonable inferences which may be drawn therefrom, tends to support the cause of action set out in the declaration. *Libby, McNeill & Libby* v. *Cook,* 222 Ill. 206.

Appellant's next contention is that the court erred in refusing to give the following instruction to the jury:

"If you believe, from the evidence, that the defendant, prior to and up to the time of the accident, had in its

employ experienced and competent machinists in its round-house for the purpose of inspecting and repairing its locomotives, and that the said machinists, or either of them, inspected the brake-shoes of engine No. 109 on the 6th day of October, 1906, and determined from such an inspection, in their or his judgment, that said brake-shoes were in good, serviceable condition for use on said engine, then, under the law, the defendant would not be liable, even though you may believe, from the evidence, that the condition of the brake-shoe caused the derailment."

All that need be said in answer to this contention is, that the court gave the jury another instruction at the appellant's request which embodies substantially the same propositions that are contained in the one refused. The instruction which the court gave is as follows:

"You are instructed that the law does not require a railroad company to maintain its locomotives in such a condition of repair as to make them absolutely safe to operate, but the law requires such company to exercise ordinary diligence in providing suitable and safe machinery for its employees to work with, and if you believe, from the evidence, that engine 109 was regularly and properly inspected by other competent employees of the defendant a reasonable time before and up to the time of the accident, and that no material defect or unsafe condition was discovered by such inspectors, and that in making such inspection the defendant used reasonable diligence to keep said engine in a reasonably safe condition for use by its employees at the time of the accident, then, under the law, the company performed its full duty to plaintiff with reference to keeping said locomotive in repair, and in such case, even though the plaintiff was injured by reason of the engine being defective or out of repair, the company would not be liable therefor."

Without deciding whether the instruction complained of is good or bad, we are clearly of the opinion that there

was no error in refusing it in view of the one that was given by the court. There are no other reasons urged for a reversal of this judgment.

The judgment of the Appellate Court for the Second District is affirmed.     *Judgment affirmed.*